DOLPHUS LAMONT *vs.* WILLIAM FULLAM & another.

Worcester. Oct. 4. — Dec. 2, 1882. LORD, C. ALLEN & COLBURN, JJ., absent.

If two persons enter into an arrangement, by which one is to furnish a yard and put it in order for manufacturing bricks, and the other is to furnish the materials and labor for making the bricks, which are to be divided between them when made, but there is no agreement to share the profits and losses of the business, they do not become partners even as to third persons.

CONTRACT, against William Fullam and F. G. Zeigler, described in the writ as "late copartners in business," upon an account annexed, for work and labor. Trial in the Superior Court, without a jury, before *Knowlton,* J., who allowed a bill of exceptions, in substance as follows:

Zeigler was defaulted; and it was admitted that the action could not be maintained against Fullam, unless it could be shown that, as to third parties, there was a partnership existing between him and Zeigler at the time the labor was performed by the plaintiff.

The plaintiff testified in substance as follows: "I work in a brickyard. I worked for the defendants in June 1881. The balance due me is $25.08, for fourteen and a half days' labor. Zeigler engaged me to work there. Fullam was there very

often.  He had a good deal to say about the business.  He had three horses there and a man.  He gave direction to the help about the work.  Sometimes he came two or three times a week, sometimes only once.  I have seen him around the kiln, and he always said he wanted the bricks set pretty good.  I have seen him give them an order to come after some brick.  I have seen him furnish some money to pay for the help."  On cross-examination he testified: "At the time of hiring, Zeigler said nothing about working for any one else than himself.  He told me what to do.  I worked till Zeigler ran away.  He paid me on the fifteenth of every month, that was what the agreement was; he gave me $20 on June 19, and $24 on July 16, making $44 in all.  I was to have $2 per day and board.  After he left, I did not make a bargain about working, and continued on working for Fullam.  While Zeigler was there, Fullam told me to set the bricks good.  I saw Fullam give Zeigler money to pay the help on July 16, at Zeigler's house.  I saw Fullam's team come down to get bricks.  Never saw him come himself."

Fullam was called by the plaintiff, and testified as follows: "At the time the plaintiff worked there, I owned one half of the brickyard; I and my son bought it in February 1881.  We never expected to manufacture bricks there.  Zeigler gave the deed to me.  It was a foreclosure sale.  He had been there two years, and had manufactured bricks there two years.  He came to me and wanted to make arrangements for making bricks.  We told him if he wanted to hire the yard he could.  He said he had not the money to put the yard in condition.  We told him that, if we could put it into condition so that he could go on and manufacture as he had been doing, and give us a share of the brick for it, he might have it.  He wanted it put into condition to make machine brick, which he thought could be done for $600.  We estimated it at $1000.  He proposed to us that, if we would furnish him the house and the yard, and firewood for burning the bricks, three horses, and one man to grind clay, he would take the yard and furnish all the labor and pay his own help and give us half the bricks.  We agreed to this arrangement.  After this bargain was made, he came to me and said that he had some little money of his own, but did not think that

he had enough, and should need some to pay his help along until he got his part of the first kiln of bricks into the market. We asked him how much he thought he should need. He answered about $300. We told him we would lend him that amount, and he might pay us when he sold his half of the bricks. He worked fixing up the yard till about the middle of May, and I paid him for his work, and took his receipt. I had no men in the yard. I had one man and a horse working there after he began making bricks, but at night the man came home. He began manufacturing about the middle of May. Some time in the month of June, he burned a kiln of bricks. About the middle of June, he came to us, and we lent him $350, and took his receipt. On July 1, we lent him $50 more. About the middle of July, he said he had had bad luck and wanted $400. We let him have some money, less than that, and took a bill of sale from him of one undivided half of the bricks. I did not know a single man of all those that he hired. I was not a brickmaker. After the yard was finished, I went there occasionally. Zeigler sold some of his bricks, and I sold mine. He did not sell any of my bricks. His contract was not complete until he had counted out to me in the yard one half of the bricks. I never authorized Zeigler to use my name in any way in the business, and never heard that he did. I do not think that he did use it. I never thought of a partnership between us, and nothing was ever said about one. My son is in partnership with me in the carpenter business, and we together owned the brickyard premises. After we let Zeigler have the last money, and took his bricks, he ran away, and we have not seen him since."

There was evidence in the case that Zeigler had failed in business at some time before this arrangement. It appeared that, up to this time, the business of manufacturing had been going on from the time it began, and there were bricks in the yard in all stages of the process of manufacture; that, from the time of taking the bill of sale, Fullam continued the business of manufacturing on his separate account from the point where Zeigler left it, and disposed of the bricks which he had completed and the material which he left in the process of manufacture; and there was no evidence that any division or counting out of the bricks ever occurred between the parties.

On this evidence, Fullam asked the judge to rule that the relationship of Fullam and Zeigler did not in law constitute a partnership as to third persons. The judge declined so to rule; and found as facts that each of the defendants agreed with the other to furnish, and pay for on his own account, those things which he undertook to contribute for the purpose of carrying on the manufacture of bricks; that Zeigler agreed to furnish and pay for all the labor except that of one man who worked with a horse; that, under the contract between the parties, it was the duty of Zeigler to pay the plaintiff from his own private funds; that Fullam did not intend to make himself liable for debts contracted for those things which Zeigler had agreed to furnish, but that he and Zeigler agreed to share equally the profits of the business; that these profits were to come in the form of manufactured bricks; and that both parties intended and arranged that their interest and ownership in the bricks should be equal; and, upon these facts, found for the plaintiff against the defendant Fullam for the amount claimed. Fullam alleged exceptions.

*H. W. King*, for Fullam.

*C. L. Gardner*, for the plaintiff.

BY THE COURT. Upon the evidence as reported to us, we are of opinion that the finding in favor of the plaintiff against the defendant Fullam cannot be sustained. There was no evidence that Fullam held himself out to the plaintiff as a partner of Zeigler. If the arrangement between the defendants was that Fullam was to furnish the yard and put it in order for manufacturing bricks, and Zeigler was to furnish the materials and labor for making the bricks, which were to be divided between them when they were made, this did not make them partners. *Holmes* v. *Old Colony Railroad*, 5 Gray, 58. The essential element of an agreement to participate in the profits and losses is wanting. We are not able to see any evidence to justify a finding that they agreed to share the profits and losses of the business, and therefore are of opinion that the plaintiff is not entitled to judgment against Fullam. *Pratt* v. *Langdon*, 97 Mass. 97. *Exceptions sustained.*